IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RASHEEN MINES, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO.  07-1739 |
| | : | |
| v. | : | |
| | : | |
| TROY LEVI, et al., | : | |
| | : | |
| Defendants. | : | |

### OPINION AND ORDER

**Slomsky, J.**                                                              **March 26, 2009**

Before the Court is the Motion to Dismiss, or in the Alternative, for Summary Judgment filed

by Defendants Troy Levi, Warden at the Federal Detection Center in Philadelphia ("FDC"), Tracey

Brown, Associate Warden of operations at the FDC and Aramis Martinez, head of the medical

department at the FDC ("Defendants").    For the reasons set forth below, the Court will grant

Defendants' Motion for Summary Judgment.

**I.        STATEMENT OF FACTS**

**A.        Plaintiff's Knee Injury and Subsequent Medical Treatment**

On September 9, 2006, Plaintiff Rasheen Mines ("Plaintiff"), while a prisoner at the Federal

Detention Center in Philadelphia ("FDC"), slipped on a ladder while descending from the upper part

of a bunk bed and injured his right knee.  (Compl. at p. 4.)  Plaintiff contends that Defendants

ignored his requests for proper medical attention and that as a result of such conduct, his knee is

permanently damaged.  (Id.)

Immediately after his injury, Plaintiff requested that his housing unit officer call the medical

unit and inform them of his fall.  (Plaintiff Dep. Dec. 3, 2008, Docket No. 30, at 34: 22.)  Later that

evening, Plaintiff told the new unit officer on duty that he had slipped off his bunk, twisted his knee, was in pain and needed medical attention. (Id. at 38:13-15.) The officer told Plaintiff that medical personnel would see him in the morning. (Id. at 39:15.) Plaintiff did not notify the medical staff of his knee pain by following the FDC procedure of filing a written sick call request form.

The following morning, Plaintiff informed another unit officer that his knee was in pain and requested to see medical personnel. (Id. at 42:17.) Later that afternoon, when Plaintiff complained that he had not been seen by medical personnel, he was instructed by the unit officer to follow the procedure of filling out a sick call request. (Id. at 46:5-8.) Plaintiff finally filled out the sick call request form two days after his fall, even though he had forms in his cell. (Id. at 46:9-13.) He then relied on his cellmate to submit the request to the medical department. (Id. at 47:7-15.) The next day, Plaintiff informed his current unit manager, Middles, that he had been in bed for three days and needed medical attention. (Id. at 49:22-50:2.) Shortly thereafter, Nurse Pina, along with a second nurse, came to Plaintiff's cell to examine his knee.[1] (Id. at 48:13-14.) According to the medical records, on September 12, 2006, Plaintiff was evaluated by a doctor, prescribed Motrin and recommended for an x-ray with a follow-up exam. The medical records also indicate that Plaintiff was prescribed ibuprofen on September 14, 2006. (Defendants' Motion to Dismiss or in the

---

[1] In his Complaint, Plaintiff avers that he did not receive any medical treatment until twelve days after the accident. (Compl. at p. 4.) In his deposition, however, Plaintiff admits that on September 12, 2006, three days after his injury, he received the following medical attention:

> "Nurse Pina and I don't recall the other nurse name, they came up finally and they looked at the my knee. They asked me what happened. I told them what happened. And, you know, they said, Okay we'll get you down to x-ray and see if we can get you some pain medication."

(Docket No. 30 at 48:13-15; see also Def. Mot. to Dismiss or in the alternative for Summary Judgment (Docket No. 18), at 33.)

Alternative for Summary Judgment (Docket No. 18) at p. 31.) Plaintiff admits that he did receive

this medication.[2] (Docket No. 30 at 82:4-9).

On September 18, 2006, in accordance with the medical staff's recommendations, Plaintiff

was given an x-ray of his right knee.[3] (Docket No.18 at 29; see also Docket No. 30 at 56:22-24.)

The x-ray showed no damage from the accident. It did show the early onset of a degenerative

disease. (Docket No.18 at 29.)

After receiving medication and learning that his x-ray was negative, Plaintiff continued to

assert that he was not receiving medical treatment. He placed additional sick calls requesting pain

medication.[4] (Docket No. 30 at 57:5-7.) Plaintiff claims that it was about a week from the time of

the injury until he was able to walk. (Docket No. 30 at 57:10-12.) Plaintiff asserts that he finally

got out of bed on a Saturday or Sunday, about five to seven days after he fell. (Id. at 62:23-24.)

On or about that following Tuesday, September 19, 2006, Plaintiff confronted Defendant

Martinez, the head of the FDC medical department, about his knee pain. (Id. at 63:4-10.) At an open

house, where all department heads gather to hear various complaints including health issues, Plaintiff

showed his injured knee to Defendant Martinez and Defendant Brown, the Associate Warden.

---

[2]When asked about receiving the ibuprofen Plaintiff responded, " I received it. I don't know when they prescribed it. I don't know if the 14th is accurate date or not. I don't recall seeing that, but, I mean, yeah, I eventually got some, but it was at least almost October, maybe." (Docket No. 30 at 82: 4-9.)

[3] At his deposition, when asked about the timing of the x-ray, Plaintiff responded, "I'm not sure the date, but I believe the 18th, they came to my cell they carried me down and put me in a wheelchair and took me to medical. Yeah I believe it was the 18th. They took me down to medical and from there they did an x-ray and they brought back to my cell." (Docket No. 30 at 56: 19-24.)

[4] Despite alleging that he made countless sick calls over an extended time period, Plaintiff has only presented two copies of sick call requests dated September 12, 2006 and September 15, 2006. (Pl. Pro Se Opposition to Defendants' Mot. for Summary Judgment (Doc. 19) at 3,4.) Plaintiff admits to being seen by medical staff on both September 12, 2006 and September 18, 2006, after filing these sick call requests. (Docket No. 30 at 56: 15-24.)

Plaintiff claimed he could barely walk. (Id. at 67:8-10.) Plaintiff informed Defendant Martinez that he had received an x-ray, but that he was given no medication for his pain. (Id. at 63:13-16.) According to Plaintiff, Defendant Martinez responded that his staff was receiving daily sick call requests from Plaintiff and that making these frequent requests did not increase his chance of being reevaluated sooner. (Id. at 63: 18-22.) Defendant Brown, upon seeing Plaintiff's knee, stated that she deferred to Defendant Martinez's judgment. (Id. at 66:5-67:14).

Around this time, on September 26, 2006, medical personnel evaluated Plaintiff in response to another sick call request he filed. He informed the nurse on duty that his knee would not bend and that he had to drag it in order to move around. (Docket No. 19 at 2.) According to Plaintiff, the nurse informed him she could do nothing further except provide a knee brace, which he claims he never received. Id. at 2. The medical report from September 26, 2006 indicates that Plaintiff reported a pain level of five on a scale of ten, had full range of motion in his knee, was diagnosed with a knee sprain and prescribed ice and over-the-counter medicine. (Docket No. 18 at 32.)

Medical records establish on December 18, 2006 that medical personnel again assessed Plaintiff's knee pain. ( Id.) It was noted that Plaintiff could walk without difficulty. He was given another prescription for joint pain and prescribed a follow-up examination as needed. (Id.)[5]

Finally, according to Plaintiff's sick call request dated March 26, 2007, Plaintiff complained he had a stiff knee and disclosed that he was currently taking medicine. (Record and Receipt Log Book 12/1/06-6/25/07 (Docket No. 21) at 136.) Records indicate that in response to Plaintiff's

---

[5] Plaintiff claims that on December 18, 2006, he was in a special housing unit and never left his cell to be evaluated. (Docket No. 19 at 2.) He states that he only spoke with a nurse who passed by his cell during a sick call and she informed him that she would put in an order for a knee brace and stronger medication, both of which he says were never supplied. (Id.)

March 26, 2007 request, Plaintiff was scheduled for an April 2, 2007 appointment with the medical

unit.  (Docket No. 21 at 136.)

**B.      Plaintiff's Exhaustion of Administrative Remedies**

In order to comply with the administrative appeal process, on or about October 20, 2006,

Plaintiff filed a Request for Administrative Remedy (No. 430947-F1) seeking a lower bunk because

his right knee was injured.  (Docket No. 18 at 27.)  On November 22, 2006, Defendant  Levi, the

Warden at the FDC, denied Plaintiff's request because the medical staff had already assessed and

treated Plaintiff's injury.  (Id. at 27.)  In accordance with procedures set forth in 28 C.F.R. § 542.10,

Plaintiff then filed a Regional Administrative Remedy Appeal (No. 430947-R1), or BP10, on or

around December 14, 2006, alleging that he still had not received adequate care for his right knee.

(Id. at 28.)  On January 12, 2007, the Northeast Regional Office denied Plaintiff's appeal finding that

FDC medical staff had adequately evaluated Plaintiff and taken an x-ray of his right knee.  Plaintiff,

however, did not receive notice of the denial of this appeal until February 13, 2007.  (Id. at 28.)

There is no record of a BP11 appeal– the final step in the appeals process– filed by, or on behalf of,

Plaintiff in response to the January 12, 2007 denial by the Northeast Regional Office.  (Id. at 26.)

Prior to receiving his denial from the Northeast Regional Office, Plaintiff prematurely filed,

on or around January 30, 2007, a BP11 form with the Office of General Counsel.  (Id. at 22: 3-10.)

Because Plaintiff had not yet received notice that the Northeast Regional Office had denied his

BP10, he did not include this denial number on his BP11 Form. The Office of General Counsel

denied Plaintiff's BP11 because, without a denial number from his BP10, they assumed he had not

exhausted his initial appeals.[6]

---

[6]   Plaintiff argues that he was informed by counsel for the I-Unit that if he did not receive a response
from his December 14, 2006 appeal by a certain date, he may receive notification that an extension was

## II.   PROCEDURAL HISTORY

On May 3, 2007, Plaintiff filed this Complaint against Defendants Levi, Brown and Martinez alleging facts which the Court liberally interprets as an attempt to state a claim under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  Plaintiff seeks $1 million in compensatory and punitive damages.  Defendants originally filed a Motion to Dismiss, or in the Alternative for Summary Judgment on October 5, 2007. (Docket No. 14.)  Because Defendants failed to properly serve Plaintiff, they refiled their Motion on December 26, 2007. (Docket No. 18.)  Plaintiff filed his response on February 19, 2008 (Docket No. 19) and all parties then filed replies.  In an Order dated October 29, 2007, former Judge James T. Giles ordered that the Motion be treated as a motion for summary judgment.  (Docket No. 15.)  After reviewing the docket and evidence presented in this action, this Court ordered Defendants to produce copies of Plaintiff's complete medical records, take Plaintiff's deposition and to file supplemental briefs.  (Docket No. 28.)  Pursuant to this Order, Defendants deposed Plaintiff on December 3, 2008 (Docket No. 30), submitted to the Court Plaintiff's medical records (Docket No. 31) and filed a supplemental brief (Docket No. 29).  The order afforded Plaintiff the opportunity to present to the Court, within forty-five days, any additional evidence in support of his claim and to file a supplemental brief.  Plaintiff has not submitted any additional evidence or brief in opposition to Defendants' Motion for Summary Judgment.

## III.   DISCUSSION

Defendants assert that they are entitled to summary judgment because (1) Plaintiff failed

---

granted in order to allow the Regional Office more time to satisfy his claim. (Docket No. 30 at 23: 11-23.)  However, if Plaintiff did not receive a letter of extension or response by January 13, 2007 from the Regional Office, he could proceed as if he had been denied. (Id. at 21: 14-16.)

to exhaust his administrative remedies, (2) Plaintiff's claims against Defendants in their official

capacities are barred by the doctrine of sovereign immunity, (3) Plaintiff fails to allege facts in

support of a Bivens claim and (4) Defendants are entitled to qualified immunity.  For the reasons

set forth below, the Court credits Defendants' second, third and fourth defenses.  Consequently,

the Motion for Summary Judgment will be granted.[7]

### A.      Summary Judgment Standard

Summary judgment is only proper "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact such that the moving party is entitled to a judgment as a matter of law."  Fed. R.

Civ. P. 56(c).  Evidence is to be viewed in the light most favorable to the non-moving party.  Id.  A

party seeking summary judgment bears the initial burden of informing the district court of the basis

for its motions and identifying the portions of the pleadings, depositions, interrogatories, admissions

or affidavits, which demonstrate that there is no genuine issue of material fact.  Id.  Once the moving

party has fulfilled its burden, the non-moving party must introduce specific evidence demonstrating

a material issue of fact and the necessity for a trial.  Anderson v. Liberty Lobby, Inc, 477 U.S. 317,

324 (1986).

The nonmoving party may not resist a properly filed motion for summary judgment by

relying solely on the unsupported conclusory allegations contained in pleadings, but rather must go

beyond the pleadings and affidavits and designate specific facts showing that there is a genuine issue

for trial.  Anderson, 477 U.S. at 325.  In ruling on Defendants' Motion for Summary Judgment, a

---

[7] It appears from the face of the Complaint that Plaintiff is attempting to state a claim for a Bivens action on the grounds that Defendants violated his Eighth Amendment rights. Construing the Complaint liberally, the Court will treat the action as being brought against Defendants in both their official and individual capacities, and will analyze the merits of Plaintiff's claim under both of these theories.

mere scintilla of evidence in support of Plaintiff's position is insufficient.  Enough evidence must

exist such that a jury could reasonably find for Plaintiff.  Anderson, 477 U.S. at 248.  If the evidence

is merely colorable or is not sufficiently probative, summary judgment may be granted.  Anett v.

Aspin, 846 F. Supp. 1234, 1237 (E.D. Pa. 1991).

### B.    Plaintiff's Failure to Exhaust Internal Administrative Remedies

Defendants first assert that Plaintiff is not entitled to relief because he failed to exhaust his

administrative remedies before filing this action.  The Prison Litigation Reform Act provides that

"no action shall be brought with respect to prison conditions under section 1983, or any other Federal

Law" by a prisoner until such "administrative remedies as are available are exhausted."  42 U.S.C.

§ 1997(e)(a).  A federal prisoner suing under a Bivens theory must first exhaust all inmate grievance

procedures just as a state prisoner must exhaust the administrative process prior to commencing an

action under §1983.[8]  Porter v. Nussle, 534 U.S. 516, 524 (2002).  The exhaustion requirement is not

jurisdictional and a district court has discretion to determine whether there is compliance with the

statute.  Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999).  The exhaustion of remedies doctrine

may not bar a plaintiff's claim if the plaintiff has demonstrated substantial compliance with the

administrative remedy scheme.  Nyhuis v. United States, 204 F.3d 65, 77 (3d Cir. 2000).

Here, in order to exhaust all internal remedies, Plaintiff must have complied with the

Administrative Remedy Procedures for Inmates as set forth in 28 C.F.R. § 542.10, et seq.[9]  Plaintiff

---

[8] Plaintiff brings this action against federal employees, not state employees.  Accordingly, Plaintiff's
claims must be analyzed under Bivens– the federal equivalent of a § 1983 action.  Brown v. Phillip
Morris, Inc., 250 F.3d 789, 800 (3d Cir. 2001).  The exhaustion of remedies requirement is contained in
42 U.S.C. § 1997(e)(a) and applies to both Bivens and § 1983 claims.  Booth v. Churner, 206 F.3d 289,
300 (3d Cir. 2000).

[9] Under 28 C.F.R. § 542, inmates are required to exhaust four administrative remedies before instituting a
court action.  First, the inmate must attempt to informally resolve the dispute with institution staff.  28

has admitted that he did not precisely follow the specific instructions for appealing the denial of his

claim by the Regional Office once it was received.  He did not attach the BP10 Form to the BP11

Form.  (Docket No. 30 at 25:1-6.)  However, Plaintiff did file with General Counsel a BP11 Form,

which would have been the correct Form to file for such an appeal.  Plaintiff's mistake was in filing

it prior to actual receipt of formal notice of denial by the Regional Office.  (Id at 21:14-22.)  When

Plaintiff received his actual denial on February 13, 2007, he did not refile his appeal because he had

already explained his position to General Counsel in his BP11 form filed on or around January 30,

2007.  (Id. at 25:4-6.)  With the exception of the procedural defect of prematurely filing a BP11 Form

without a claim number and without attaching the BP10 Form, Plaintiff has complied with all

administrative remedy requirements.  Consequently, the Court will exercise its discretion and

proceed to examine the merits of Plaintiff's claims because Plaintiff has substantially complied with

the administrative appeal process.

### C.    Plaintiff's Claim is Barred Under the Doctrine of Sovereign Immunity

Plaintiff has alleged a violation of his constitutional rights by the failure of prison officials

to provide proper medical treatment.  (Compl. p. 4.)  Defendants contend that to the extent such

claims are brought against Defendants in their official capacity, as federal officials, the claims are

barred by the doctrine of sovereign immunity.  The Court agrees.

"It is a fundamental principle of sovereign immunity that federal courts do not have

jurisdiction over suits against the United States unless Congress, via statute, expressly and

---

C.F.R. § 542.13.  If this first step fails, the inmate must then raise his complaint to the warden within 20
days from the date on which the basis of the complaint occurred.  Id. at §§ 542.13, 542.14.  If the warden
denies the request, the inmate may then file an appeal with the Regional Director within 20 days from the
date of the warden's response.  Id. §§ 542.14, 542.15.  Finally, if the Regional Director's Office denies
the request, the inmate may appeal to General Counsel of the Federal Bureau of Prisons within 30 days
from the date of the Regional Director's response.  Id.

unequivocally waives the United States' immunity to suit." U.S. v. Bein, 214 F.3d 408, 412 (3d Cir.

2000).  An action filed against a federal official in his official capacity is considered a suit against

the United States.  Kennedy v. Mendez, No. 3:03-CV-1366, 2004 U.S. Dist. LEXIS 21004 at *6-7

(M.D. Pa. 2004).  The United States has not waived its immunity from liability for damages based

on alleged constitutional violations.  See Bivens, 403 U.S. at 410.  Consequently, to the extent

Plaintiff is suing Defendants in their official capacity for a violation of his Eighth Amendment

Rights, Defendants are immune from suit and the action is improper.  See  Kennedy, No. 3:03-CV-

1366, 2004 U.S. Dist. LEXIS 21004 at *6-7 (M.D. Pa. January 15, 2004 ) (holding that sovereign

immunity prevented prisoner from seeking damages for alleged constitutional violations against

individual prison medics in their official capacities).

D.      **Plaintiff's Bivens Claim against Defendants in their Individual Capacities**

Since a plaintiff may bring a Bivens action against prison officials in their individual capacity

for an alleged constitutional violation, the Court will address the alleged facts in support of this

claim in the light most favorable to Plaintiff as the non-moving party. [10]  Plaintiff asserts that

Defendants violated the Eighth Amendment by denying him immediate medical attention for a

serious medical need.  (Compl. at p. 4.)   In order to succeed on a Bivens action alleging an Eighth

Amendment violation, Plaintiff must allege facts that show Defendants were (1) deliberately

indifferent (2) to a serious medical need.  Helling v. McKinney, 509 U.S. 25, 32 (1993).  Plaintiff

fails to allege facts in support of either of these prima facie requirements.

---

[10] Although not articulated by Plaintiff in his Complaint, as noted above, any claim by a federal prisoner
against a federal official in his individual capacity for a violation of a constitutional right should be
treated as one arising under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403
U.S. 388 (1971) and the doctrine of sovereign immunity is inapplicable.

1.      Deliberate Indifference

First, to prove deliberate indifference Plaintiff must demonstrate that Defendants (1) knew

of and disregarded an excessive risk to inmate health or safety or (2) were aware of facts from which

the inference could be drawn that a substantial risk of serious harm existed and that Defendants

"drew that inference." Farmer v. Brennan, 511 U.S. 825, 825 (1994) (official not only must be aware

of facts from which inference of substantial risk of harm could be drawn but also must draw that

inference). "Deliberate indifference. . . requires obduracy and wantonness which has been likened

to conduct that includes recklessness or a conscious disregard of a serious risk." Rouse v. Plantier,

182 F.3d 192, 197 (3d Cir. 1999). The Court has considered the allegations made against each

individual Defendant and holds that Plaintiff has failed to put forth evidence that they were

deliberately indifferent to his knee injury.

a.      Defendant Levi

Plaintiff only alleges that Defendant Levi knew of his injury through the grievances Plaintiff

filed. As such, Defendant Levi, the Warden of the FDC, cannot be held liable for a Bivens actions

because he was a non-medical prison official in a supervisory role who did not have personal

involvement with the alleged constitutional violation. Rode v. Dellarciprete, 845 F.2d 1195, 1208

(3d Cir. 1998).[11] Personal involvement can be shown if the supervisor "kn[ew] of the constitutional

deprivation, participated in the deprivation or acquiesced to the wrongful conduct. Id.; Despaigne

v. Corlew, 89 F. Supp. 2d 582, 587 (E.D. Pa. 2000). A mere "linkage in the prison chain of

---

[11] Although Rode involved a § 1983 claim, its holding has been applied to Bivens actions. See Farmer v. U.S., 2009 U.S. Dist. LEXIS 18976, *46-47 (M.D. Pa. March 4, 2009).

command" is not sufficient to demonstrate that a supervisory defendant has had personal involvement in an alleged constitutional violation for the purpose of proving that he was deliberately indifferent. See Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985). In addition, receiving and failing to respond to a grievance sent by a prisoner is not sufficient to demonstrate personal involvement of a prison supervisor, especially when such a failure does not subject the prisoner to a substantial risk of harm. See Brooks v. Horn, No. 00-03637, 2004 U.S. Dist. LEXIS 6240, at *15-16 (E.D. Pa. April 7, 2004). Plaintiff has alleged no personal involvement on the part of Defendant Levi, outside of denying Plaintiff's grievance request. Accordingly, even after viewing the facts in a light most favorable to Plaintiff, he cannot demonstrate that Defendant Levi was personally involved in any alleged constitutional violation.

b.    Defendant Brown

Plaintiff alleges that he showed his inured knee to Defendant Brown, the Associate Warden, and she took no action, deferring instead to the evaluation of Defendant Martinez, the head of the FDC medical department. This allegation does not constitute deliberate indifference because Defendant Brown had the right to rely upon to the judgment of medical personnel.[12] Courts have found that when a prisoner is under the care of medical personnel, a non-medical supervisor is entitled to defer to the professional judgment of the prison doctor. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) ("If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands . . . . Holding a

---

[12] Defendant Levi denied Plaintiff's grievance during the administrative remedy process because Plaintiff had already received medical treatment for his injured knee. (Docket No. 18 at 27). Defendant Levi also deferred to medical opinion when denying the grievance. The rationale pertaining to Defendant Brown's reliance upon the judgment of medical personnel is also applicable to Defendant Levi.

non-medical prison official liable in a case where a prisoner was under a physician's care would

strain [the prison's] division of labor.").

Accordingly, Defendant Brown is entitled to summary judgment on Plaintiff's <u>Bivens</u> claim

because her deference to Defendant Martinez does not constitute deliberate indifference.

c.      Defendant Martinez

Plaintiff does allege sufficient facts to demonstrate that Defendant Martinez, as the head of

the medical department, knew of his injury.  However, Plaintiff fails to allege any facts which

demonstrate that Defendant Martinez was deliberately indifferent to this injury.[13]

Here, as indicated by the medical records and Plaintiff's own testimony, medical staff

examined  Plaintiff on multiple occasions, x-rayed his knee, bandaged his knee and provided pain

medication within days after the injury occurred on September 9, 2006.[14]  The medical records

indicate, and Plaintiff admits, that on September 12, 2006, he was evaluated by two nurses. (Docket

No. 18 at 33; Docket No. 30 at 56:7-16.) On September 14, 2006, medical personnel prescribed pain

---

[13]  As stated above, the Court finds that the actions of Defendants Levi and Brown do not amount to the
level of personal involvement necessary to satisfy the deliberate indifference standard.  Even if,
arguendo, their actions did qualify as personal involvement, for the reasons set forth in this section
pertaining to Defendant Martinez, Plaintiff fails to demonstrate that medical personnel were deliberately
indifferent to his knee injury.

[14]  Although the nurses did not evaluate Plaintiff until four days after the injury occurred, this delay was
due in part to Plaintiff's reliance on others and his failure to properly follow FDC procedures.  Plaintiff
testified that he did not directly call for assistance during this three day period.  Instead he relied upon his
cellmate to alert the medical staff of his needs. (Docket No. 30 at 33:17-35:22.)  Even though he had the
sick call forms in his cell, Plaintiff did not fill out a request until at least two days after his fall. (<u>Id.</u> at
46:9-13.) Plaintiff then relied on his cellmate and a unit officer to deliver the form to the medical staff.
(<u>Id.</u> at 47:7-15; 55:2-14.)  Had Plaintiff followed prison procedures of filing a sick call form on
September 9, 2006, medical personnel would have responded earlier than September 12, 2006.  He
received prompt medical attention when he filled out the form two days after his accident. (Docket No.
18 at 33.)

13

medication for Plaintiff. (Docket No. 18 at 31.)  On September 18, 2006, Plaintiff admits that his

knee was x-rayed and wrapped in an ace bandage.   The x-ray, which Defendants Brown and

Martinez reviewed, revealed only the early onset of a degenerative condition.  (Id. at 29.)  Again, on

September 26, 2006, Plaintiff was treated for a knee sprain and advised to take over the counter pain

medication.  (Id.at 31.)   Plaintiff testified in his deposition that he was never prevented from

obtaining or taking medication that was prescribed to him. (Docket No. 30 at 19:11-16.)   On

December 18, 2006, Plaintiff was again seen by the medical staff who found that he had full range

of motion and could walk without difficulty.  Plaintiff was given another prescription for joint pain

and prescribed a follow-up examination as needed.  (Id. at 32.)  Thus, based on the record, it is

undeniable that Plaintiff received medical attention for his injured knee for months following his

injury.

The crux of Plaintiff's argument, however, is that because he disagrees with the treatment

the medical staff provided, Defendants were deliberately indifferent to his medical needs.[15]

Specifically, Plaintiff contends that Defendants should have prescribed him "something for the pain

and swelling."  (Docket No. 30 at 72:16-21.)  Plaintiff may have been disatisifed with his medical

treatment.  However, it is well established that  "an inmate's disagreement with medical treatment

is insufficient to establish deliberate indifference."  Burton v Gillis, 2008 WL 443367, * 12 (M.D.

Pa. Sept. 30, 2008).  The Eighth Amendment "does not require that a prisoner receive every medical

treatment that he requests or that is available elsewhere."  Id.  At most, Plaintiff's claims about

---

[15] Plaintiff has not alleged any facts to suggest that he did not receive medical treatment for his injuries.
Instead, Plaintiff relies on unsupported allegations in his pleadings. These allegations, by themselves, are
insufficient under Fed. R. Civ. P. 56(c) to create a genuine issue of material fact.

Defendants' actions amount to negligence in assessing the seriousness of Plaintiff's injury, not deliberate indifference. Such negligence cannot form the basis for an Eighth Amendment claim.[16] See Brown v. Chambersburg, 903 F.2d 274,278 (3d Cir. 1990).

### 2.   Serious Medical Need

Second, the record demonstrates that Plaintiff's injury does not amount to a serious medical need– a prerequisite for finding an Eighth Amendment violation. Helling, 509 U.S. at 32. For Plaintiff's injury to be considered a serious medical need, it must be "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991).

Plaintiff alleges that "anybody should have known from just the sight of [his] knee alone that some type of pain medication was necessary for a slip off the top bunk." (Docket No. 30 at 72:8-11.) These allegations are unsupported and contradicted by the facts on the record. Plaintiff was evaluated by a physician who conducted an x-ray of Plaintiff's knee, found no fracture or other serious damage, bandaged the knee and proscribed ibuprofen for the pain. (Docket No. 18 at 29, 33.) Plaintiff alleges no facts to contradict Defendants' evidence that Plaintiff's x-ray showed only early signs of a degenerative condition. Accordingly, Plaintiff's swollen and "stiff" knee does not rise to the level of serious medical need necessary for this Court to find an Eighth Amendment violation.

---

[16] See Nottingham v. Peoria, 709 F.Supp. 542, 547 (M.D. Pa. 1988) (finding no Eighth Amendment violation where inmate is provided with medical care and there is dispute over adequacy of care); Monmouth county Correction Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (holding disagreement over proper medical treatment does not support Eighth Amendment claim.); White v. Napolean, 897 F.2d 103, 108 (3d Cir. 1990) (finding medical negligence alone or any disagreements over the professional judgment of health care provider cannot result in Eighth Amendment violation.)

See, e.g., Brander v. First Correctional, 167 Fed. Appx. 328, 329-30 (3d Cir. 2006) (dismissing

inmate's complaint which alleged that prison officials failed to treat pain and swelling in inmate's

knee because "[t]hese allegations do not rise to the level of deliberate indifference on the part of

Appellees to [inmate's] serious medical needs."); Borelli v. Askey, 582 F. Supp. 512, 513 (E.D. Pa.

1984) (slight visual impairment causing mild headaches and mild tension is not serious medical

need); Wesson v. Iglesby, 910 F.2d 278, 284 (5th Cir. 1990) (swollen wrists are not serious medical

need); Price v. Engert, 589 F. Supp.2d 240, 246 (W.D. N.Y. 2008) (no serious injury was alleged

where multiple x-rays revealed no fractures to injuries on left knee, right wrist and right hand).

**E.     Defendants Are Entitled to Qualified Immunity in their Personal Capacity**

Finally, the Court is granting summary judgment against Plaintiff for the additional reason

that, as a matter of law, Defendants are entitled to qualified immunity.

Defendants assert that they are entitled to qualified immunity in their personal capacity

because Plaintiff has failed to demonstrate a  violation of a clearly established constitutional right.

The doctrine of qualified immunity protects government officials "from liability for civil suit

damages insofar as their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

 In resolving claims of qualified immunity, a court must decide (1) whether the facts alleged or

shown by plaintiff make out a violation of a constitutional right and (2) whether that right was clearly

established at the time of the defendant's misconduct. Pearson v. Callahan, 129 S. Ct. 808, 815

(2009) (altering decision in Saucier v. Katz, 533 U.S. 194 (2001) and holding that it was appropriate

for district court to address second prong of two part test first).   "The relevant, dispositive inquiry

in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." See Saucier, 533 U.S. at 203.

As stated above, Defendants' actions do not rise to the level of deliberate indifference necessary support Plaintiff's Bivens claim for a violation of his Eighth Amendment rights. Thus, Plaintiff fails the first prong of the Saucier test.  Moreover, even if Plaintiff was able to allege a constitutional violation, the Court does not find that such rights were "clearly established." At most, Plaintiff contends that Defendants exercised poor judgment by concluding that his medical injury did not require more medical attention than he received.  The doctrine of qualified immunity, however, "gives ample room for mistaken judgments." Mally v. Briggs, 475 U.S. 335, 341 (1986). See Brown v. McElroy, 160 F. Supp. 2d 699, 706 (S.D.N.Y. 2001) (holding prison officials were entitled to qualified immunity on plaintiff's Bivens claims because "the fact that a plaintiff feels that more should have been done for his condition is not a sufficient basis for a deliberate indifference claim.") Plaintiff alleges no facts which indicate that Defendants took any action which a reasonable officer would consider to be "unlawful."  To the contrary, as stated above, FDC medical staff treated Plaintiff on several occasions.  Denying Defendants immunity from Plaintiff's claims would undermine the ability of prison medical staff to exercise their discretion and make medical judgments in managing medical care for large prison populations.  See Harlow, 457 at 819.  Accordingly, Defendants are immune from suit under the doctrine of qualified immunity.

An appropriate Order follows.

17

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RASHEEN MINES, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO.  07-1739 |
| | : | |
| v. | : | |
| | : | |
| TROY LEVI, et al., | : | |
| | : | |
| Defendants. | : | |

**ORDER**

**AND NOW**, this 26th day of March, 2009, upon consideration of Defendants'

Motion to Dismiss or in the Alternative, for Summary Judgment (Docket No. 18), Plaintiff's

response thereto (Docket No. 19), both parties' replies (Docket Nos. 23 and 24) and Defendants'

Supplemental Brief (Docket No. 29), and after a complete review of all pleadings, discovery and

affidavits on file, it is **ORDERED** as follows:

1.      Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff's

claims are dismissed.

2.      Any pending motions are **DENIED AS MOOT**.

3.      The Clerk shall close the above-captioned matter.


BY THE COURT:



 /s/ Joel H. Slomsky, J.
JOEL H. SLOMSKY, J.


18